**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JAMES KOMOROSKI and | ) | |
| GALEN VERHULST, | ) | |
| individually and on behalf of those | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:16-CV-00294-DGK |
| v. | ) | |
| | ) | |
| UTILITY SERVICE PARTNERS PRIVATE | ) | |
| LABEL, INC. d/b/a SERVICE LINE | ) | |
| WARRANTIES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT

This case is a putative consumer class action. Plaintiffs James Komoroski ("Komoroski") and Galen Verhulst ("Verhulst") (collectively, "Plaintiffs") purchased utility warranties from Defendant Utility Service Partners Private Label, Inc., doing business as Service Line Warranties of America ("Defendant"), which would defray the cost to repair and replace the water service line running into their home. Plaintiffs allege Defendant routinely denied warranty coverage for some legitimate repair claims.

Now before the Court are Plaintiffs' motion for preliminary approval of class action settlement (Doc. 24) and the parties' Stipulation and Settlement Agreement ("the Settlement") (Doc. 26). Finding that a settlement class should be conditionally certified and that the Settlement is within the range of reasonableness, the motion for preliminary approval is GRANTED.

The Court has altered the parties' proposed schedule and some procedures relating to objections and exclusion, so the parties should read this order carefully.

**Standard**

Federal Rule of Civil Procedure 23(e) mandates judicial review of any "settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." In the Eighth Circuit, "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).

When a proposed class-wide settlement is reached, it must be submitted to the court for preliminary approval. W. Rubenstein, *Newberg on Class Actions* (5th ed. 2007) §13:12. District court review of a proposed class action settlement is a three-step process. *Id.* §13:10. Step one is a preliminary, pre-notification determination as to whether the proposed settlement is "within the range of possible approval." *Id.* If the court grants preliminary approval, step two is sending notice to the class describing the terms of the proposed settlement, at which time "class members are given an opportunity to object or, in Rule 23(b)(3) class actions, opt out of the settlement." *Id.* The court also holds a fairness hearing at which class members may appear and support or object to the settlement. *Id.* At step three, the court decides whether to give final approval to the settlement, taking into account all of the information learned during the process. *Id.*

This motion concerns the first step, preliminary approval. Preliminary approval does not require the court to decide the ultimate question whether a proposed settlement is fair, reasonable, and adequate. At this stage, the issue is whether the proposed settlement falls within the range of fairness so that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final approval. *See Manual for Complex Litigation, Fourth*, § 21.632 (2004). If the court determines a proposed settlement falls within this range and a class has not yet been certified, its preliminary approval order may provisionally certify a class and designate class counsel, class representatives, and a claims administrator. *See* Rubenstein §13:12. The preliminary

approval order will also authorize the parties to provide notice of the proposed settlement to the class and set forth a schedule for objections, opt-outs, a final fairness hearing, and other deadlines. *See id.*

A district court cannot certify a class, even for settlement purposes, "until it is satisfied, after 'a rigorous analysis,' that Rule 23(a)'s certification prerequisites are met." *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). This "rigorous analysis" requires the district court to state "its reasons for certification in terms specific enough for meaningful appellate review." *Id.* This entails more than just repeating Rule 23(a)'s language; the district court must state the basic facts demonstrating each requirement is fulfilled. *Id.*

To certify a class under Rule 23, the plaintiff must first establish that the proposed class is "adequately defined and clearly ascertainable." *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 996 (8th Cir. 2016). Additionally, all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) must be satisfied. *Id.* at 995. Rule 23(a) requires the moving party to show "(1) the class is so numerous that joinder of all members is impracticable . . . (2) there are questions of law or fact common to the class . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are often summarized as numerosity, commonality, typicality, and adequacy. *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009). Rule 23(b) requires a showing that

> (1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

## Background[1]

In Kansas City, Missouri, ("City"), residents receive tap water through a series of underground pipes called water mains that, in residential neighborhoods, typically run underground

---

[1] The summary of this dispute draws heavily from Plaintiff's description in the pending motion. The Court uses it without further attribution.

in easements along City streets. City water mains and connections to it are regulated and maintained by the City's Water Services Department ("WSD"). City water mains connect to smaller pipes, called service lines, which run underground from the mains into buildings and homes.

Historically, galvanized pipe was used for the water service lines connecting water mains to buildings and homes. Galvanized pipes are steel pipes that have a protective zinc coating. The zinc coating prevents corrosive substances from reaching the more delicate part of the pipe—the steel— which is susceptible to corrosion. Over time, the zinc coating erodes and corrosion sets in, weakening the steel and eventually causing a rupture. More recently, WSD required that galvanized pipe be replaced with copper pipe for service lines whenever the line is repaired because copper is more resistant to corrosion.

The City, through the WSD, is responsible for maintenance and upkeep of water mains, and homeowners are responsible for maintenance of the service lines connecting their homes to the water mains. If a service line breaks, the burden to pay the cost of repair/replacement falls on the homeowner.

Each building and home connected to the City's water system has a water meter. Historically, a water meter was placed at the end of a service line, inside a home. More recently, water meters at residential locations are placed in underground "meter pits" near the connection between the City's water main and the service line. WSD now requires homeowners to relocate inside water meters outside whenever the service line is repaired.

Defendant sells utility warranties. A utility warranty is essentially a contract whereby a consumer pays a monthly or annual premium to a warranty provider, such as Defendant, in exchange for warranty protection against certain leaks, ruptures, and other needed repairs to utility lines. For example, if a homeowner purchases a warranty covering his water service line and the service line subsequently ruptures, the warranty provider is required to repair or replace the service

line, subject to the terms of the warranty. Defendant sold approximately 9,500 of these warranties to customers in Kansas City, Missouri, which were in effect as of February 17, 2016.

Komoroski purchased a water service warranty from Defendant, and has not made a claim under that warranty. Verhulst purchased a water service warranty from Defendant and did experience a ruptured service line. After making a claim under his warranty, Verhulst incurred costs associated with the repair he believes should have been covered by his warranty.

On February 17, 2016, Komoroski filed a Petition in the Circuit Court of Jackson County, Missouri, entitled *Komoroski v. Utility Service Partners Private Label, Inc., d/b/a/ Service Line Warranties of America* (the "Action").[2] The Petition alleges Defendant routinely denied warranty coverage for the cost of replacing galvanized steel pipes with copper ones, and for relocating interior water meters outside whenever a service line had to be repaired. It alleges violations of the Missouri Merchandising Practices Act ("MMPA"), breach of contract, and breach of the duty of good faith and fair dealing. It seeks declaratory relief and damages, including statutory attorneys' fees under the MMPA. On March 24, 2016, Verhulst joined the Action as a class representative.

Defendant denied the allegations and, on April 1, 2016, removed the Action to this Court. The case was assigned to the Honorable Howard F. Sachs, Senior United States District Court Judge. After removal, Defendant filed a motion to dismiss, which Judge Sachs denied, and the parties engaged in informal discovery and extensive arms-length settlement negotiations, including at least one session with a third-party mediator.

On July 5, 2016, the parties notified Judge Sachs that they had reached a settlement of all material terms and were "in the process of finalizing the form of settlement agreement and motion for preliminary approval to be submitted to the Court." Joint Mot. for Stay at 1 (Doc. 20). On January 23, 2017, the parties submitted an initial proposed settlement (Doc. 24-1). Judge Sachs

---

[2] Case No. 1616-CV03728.

recused on February 13, 2017, and the case was reassigned to this Court. On February 20, 2017, the parties submitted a slightly modified proposal, the Settlement.

The Settlement creates a settlement class ("the Settlement Class") defined as "all individuals with galvanized steel water service lines or interior water meters in Kansas City, Missouri who purchased a Warranty Agreement from [Defendant] which was still in effect as of February 17, 2016." Settlement ¶ 1.29 (Doc. 26). It also creates a subclass ("the Damages Subclass") defined as,

> [T]hose individuals who were covered by a Warranty Agreement between May 1, 2015, and February 17, 2016, who made a valid claim under their Warranty Agreement and whose claims were denied in whole or in part for costs associated with replacing galvanized steel pipes with copper ones or for costs associated with relocating interior water meters to outside water meter pits (the "Damages Subclass").

*Id.* The parties report this subclass consists of approximately five individuals. Both the Settlement Class and the Damages Subclass exclude "all officers, directors and employees of Defendant, and their legal representatives, heirs, or assigns, any Judges to whom the Action is assigned, their staffs, and their immediate families, any Class Members who submit timely requests for exclusion, and Class Counsel." *Id.*

The benefits received by the class members vary. For settlement class members who are not part of the Damages Subclass, Defendant agrees to adopt a business practice going forward of paying the cost of replacing galvanized steel service lines with copper pipes and/or the cost of relocating interior water meters to outside water meter pits to the extent required by the WSD, up to the payment limits provided for in the warranty. For the Damages Subclass, Defendant will pay 110% of their out-of-pocket costs for repairs which Defendant did not previously pay, to the extent those repair costs relate to copper pipe replacement or water meter relocation and subject to the claim limits of the Warranty. To receive a payment, a subclass member must submit a claim form.

Defendant will pay all costs of settlement administration, including providing notice by direct mail, and will administer the Settlement.  In return for these benefits, the Class Members will release Defendant and related entities from claims covered by the Action.

The Settlement also provides incentive awards of $3,500 each to Komoroski and Verhulst, the designated class representatives.  It further provides for an award of attorneys' fees and costs to Plaintiffs' counsel in a "free-sailing" provision under which Defendant agrees not to contest an award of attorneys' fees and costs to Plaintiffs' counsel of up to $83,000.

<b>Discussion</b>

**I.      The proposed class and subclass are adequately defined and clearly ascertainable.**

As a threshold matter, the Court finds the proposed class and subclass are adequately defined and clearly ascertainable.  The definition of the proposed class is straightforward:  "All individuals with galvanized steel water service lines or interior water meters in Kansas City, Missouri who purchased a Warranty Agreement from [Defendant] which was still in effect as of February 17, 2016."  The Court recognizes there is a theoretical problem with ascertainability here caused by defining the class in part as "individuals with galvanized steel water service lines." Because water service lines are typically buried underground, if the house is old, Defendant has no idea whether the warranty holder's water service line is made of steel or copper.  (Frankly, if the house is old, the homeowner probably has no idea what the water line is made out of either unless he or she has previously repaired it.)  Thus, absent digging up every warranty holder's yard, it is not possible to determine at the present time exactly who is and is not a class member.  This is problematic because there is caselaw stating a class is not ascertainable if extensive and individualized fact-finding is necessary to determine class membership. *See, e.g.*, *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012).  But because Defendant is changing its business practice going forward to pay the cost of replacing galvanized steel service lines with

copper pipes and pay the cost of relocating interior water meters to outside water meter pits, a change which covers all of its Kansas City, Missouri, warranty holders, even those who have copper service lines, the class definition is effectively *all individuals* in Kansas City, Missouri, who purchased a Warranty Agreement from Defendant which was still in effect as of February 17, 2016.[3] Who these warranty holders are can be easily determined, namely by looking through Defendant's records. Thus, as a practical matter, the class definition is "clearly ascertainable."[4]

The Damages Subclass, comprised of those who between May 1, 2015, and February 17, 2016, made a valid claim under their Warranty Agreement and whose claims were denied in whole or in part for costs associated with replacing galvanized steel pipes with copper ones or for costs associated with relocating interior water meters to outside water meter pits is adequately defined and clearly ascertainable. Indeed, by combing through its records, Defendant has already identified five such subclass members.

## II. The parties have demonstrated conditional class certification is appropriate.

### A. The Rule 23(a) factors are satisfied.

The Court holds the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are satisfied here. First, the parties have demonstrated the class is so numerous that joinder of all members is impracticable. There is no magic number to satisfy the numerosity requirement; the putative class must simply be so numerous that joinder of all class members is impractical. *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1119 (8th Cir. 2005). Here, the proposed Settlement Class consists of approximately 9,500 individuals. The Court holds joinder of this many individual claims would be impractical and that classes with far fewer members have been certified.

---

[3] This assumes that all individuals in Kansas City, Missouri, who purchased a Warranty Agreement from [Defendant] which was still in effect as of February 17, 2016, are covered by the Settlement. Although this appears to be the case, the Court will confirm this before granting final approval to the Settlement.

[4] The parties should consider amending the class definition to make this clear, but the Court will not withhold class certification on this basis.

*See, e.g., Arkansas Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (holding no abuse of discretion in certifying a class containing approximately twenty individuals).

Second, there is a question of law or fact common to the class, namely whether Defendant breached its contractual duty. To satisfy Rule 23(a)(2)'s commonality requirement, the plaintiff must do more than show the presence of common questions of law or fact. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). The plaintiff must show that there are common questions with "common *answers* apt to drive the resolution of the litigation" for the proposed class as a whole. *Id.* (quotation omitted). The class claims "must depend on a common contention" which is "of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve the issue that is central to the validity of each one of the claims in one stroke." *Id.* Defendant issued warranties which have essentially uniform language, and then acted uniformly in denying reimbursement for the cost of replacing galvanized steel pipe and relocating interior water meters. Hence, the nearly identical nature of the alleged breach of contract claims satisfies the commonality requirement.

Third, Komoroski and Verhulst's claims are typical of the Settlement Class and Damages Subclasses, respectively. "A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory." *See* Rubenstein § 3:29. "The test for typicality is not demanding and 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Id.* (quoting *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001)). The plaintiff's claims need not be identical to those of the class; typicality is satisfied so long as named plaintiff's claims share the essential characteristics of the absent class members' claims. *Id.* Komoroski and Verhulst's claims are based on the same legal theory that the class members' claims are based upon, namely, that Defendant's treatment of their

and the other class members' warranties constitutes breach of contract. Thus, this element is satisfied.

Fourth, the proposed class representatives and their attorneys will fairly and adequately protect the interests of the class. The purpose of ensuring that the named plaintiff will adequately represent the class is "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). In order to satisfy 23(a)(4)'s adequacy requirement, the named plaintiff must be "part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (quotations omitted). In addition to determining the adequacy of the plaintiff as a class representative, the court must determine whether plaintiff's counsel is adequate. *Id.* Absent evidence to the contrary, the court assumes class counsel is adequate. *Morgan v. United Parcel Serv. of Am., Inc.,* 169 F.R.D. 349, 357 (E.D. Mo. 1996). There is no evidence of any conflicts of interest here. Further, the proposed class representatives are part of the class, or subclass, they will represent, and the proposed class representatives suffer the same injuries as those they are representing. Class counsel are experienced in prosecuting class actions and will fairly and adequately protect the interests of the class.

**B.      Rule 23(b) is also satisfied.**

The proposed class here also satisfies Rule 23(b)(3)'s requirement that common issues predominate over individual ones.

"At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.

2005). "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* "In making its determination, the district court must undertake a rigorous analysis that includes examination of what the parties would be required to prove at trial." *Avritt*, 615 F.3d at 1029. This analysis "is more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

When presented "with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. But the "other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.*

The Court finds the proposed Settlement Class and Damages Subclass are sufficiently cohesive to certify a class and subclass. The proposed class representatives seek redress for the same alleged claims as the class members they seek to represent, and common questions of law and fact, such as interpretation of the warranties' language, predominates over individual questions. Additionally, class resolution is superior to other available methods for the fair and efficient adjudication of this controversy, because a class-wide settlement is a more efficient use of the parties'—and the judiciary's—resources.[5] This is particularly true here since Defendant seems to be willing to acknowledge that if it made a mistake, it would like to remedy it as quickly as possible. Thus, under the circumstances, a class-wide resolution of these claims is superior.

---

[5] The Court takes no position on the parties' claim that "[t]he claims of the Settlement Class would prove uneconomical for individual action because litigation costs could dwarf potential recovery." The Court notes the MMPA provides a prevailing plaintiff with attorneys' fees and costs, and Plaintiffs are seeking punitive damages. These factors arguably make individual lawsuits economically feasible, albeit less tactically advantageous since a class action gives Plaintiffs the ability to leverage the threat of class-wide damages into a more advantageous settlement.

**III.    The Settlement is within the range of fairness.**

The Court further finds the Settlement is within the range of fairness so that notice should be given to class members and a hearing scheduled to consider final approval.  As discussed earlier, preliminary approval does not require the court to answer the ultimate question of whether the Settlement is fair, reasonable, and adequate, only whether it falls within the range of fairness.  *See Manual for Complex Litigation*, § 21.632.

Although the existing record is wanting because the Court cannot tell what the potential value of the class members' claims are, it is clear enough that the Settlement arguably provides substantial benefits to the class:  All members of the settlement class will receive declaratory relief ensuring that in the future Defendant will pay the cost to replace galvanized steel pipes with copper ones and to relocate interior water meters outside, subject to the limits in the warranty.  And for individuals in the Damages Subclass, Defendant will pay 110% of their out-of-pocket costs for repairs which it did not previously pay, subject to the other limits in the warranty.  The Court also notes that if an insufficient number of Damages Subclass members file claims, it could withhold final approval.

Another positive aspect of the Settlement is that Defendant bears the entire cost of settlement administration.  Of course, the fact that Defendant is also serving as the claims administrator is problematic because it is an inherent conflict of interest.  The Court prefers an experienced, impartial third-party claims administrator.  But since there are only approximately five subclass members who may submit claims, this arrangement could be reasonable under the circumstances.

Turning to the attorneys' fees request of $83,000, the Court notes the "clear sailing" provision is a potential red flag.  Such a provision, however, is not uncommon and is not enough, by itself, to render the Settlement unfair or unreasonable.  The potential for abuse here is also lessened

by the fact that the Court will base its award of attorneys' fees in part on the actual benefit received by the class members. And it will make this decision on the amount of attorneys' fees to award after the final fairness hearing, so it can ensure that the fees awarded are fairly earned.

Finally, the proposed class representative payment of $3,500 appears reasonable.

## Conclusion

After careful review and consideration of the Settlement, the Court finds and orders as follows.[6]

1.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

2.      The Court gives preliminarily approval to the Settlement, subject to final determination by the Court at the final fairness hearing.

3.      The Court conditionally certifies, for settlement purposes only (and for no other purpose and with no other effect upon the Action, including no effect upon the Action should the Settlement not receive final approval or should the Effective Date not occur), a class defined as all individuals with galvanized steel water service lines or interior water meters in Kansas City, Missouri who purchased a Warranty Agreement from Defendant which was still in effect as of February 17, 2016. The Court also certifies a subclass comprised of those individuals who were covered by a Warranty Agreement between May 1, 2015, and February 17, 2016, who made a valid claim under their Warranty Agreement and whose claims were denied in whole or in part for costs associated with replacing galvanized steel pipes with copper ones or for costs associated with relocating interior water meters to outside water meter pits (the "Damages Subclass"). Excluded from the Settlement Class are all officers, directors and employees of Defendant, and their legal

---

[6] The Court modeled this portion of its order from the parties' Proposed Preliminary Order, which was attached to the Settlement as Exhibit B. The Court has made material alterations to the proposed order, so the parties should carefully review this portion of the order.

representatives, heirs, or assigns, any Judges to whom the Action is assigned, their staffs, and their immediate families, and Class Counsel.

4.     The Court appoints, for settlement purposes, Plaintiffs James Komoroski and Galen Verhulst as Class Representatives, and Attorneys Robert A. Horn and Joseph A. Kronawitter of the Law Office of Horn Aylward & Bandy, LLC and Phyllis Norman of The Norman Law Firm as Settlement Class Counsel.

5.     A hearing (the "Final Fairness Hearing") shall be held on November 2, 2017, at 9:00 a.m. at the United States District Court for the Western District of Missouri, Charles Evans Whittaker Courthouse, in Courtroom 8D, located at 400 East 9th Street, Kansas City, Missouri, 64106,[7] to determine whether the Settlement is fair, reasonable, and adequate and should be approved by the Court; whether a Judgment as provided in Section 8.1 of the Settlement should be entered; and to determine any amount of fees and expenses that should be awarded to Class Counsel and any award to the Class Representatives for their representation of the Settlement Class.

6.     The Court approves, as to form and content, the Notices submitted by the parties (Exhibits A-1 and A-2 to the Settlement) with the following exceptions:

>     i.     To avoid confusion, in paragraph 19 of the "no damages" notice and paragraph 20 of the "damages" notice, the case number should be changed to "16-cv-0294-DGK" to reflect the fact that Judge Sachs is no longer hearing this case.  Additionally, throughout the notices, all references to "Judge Sachs" should be replaced with "Judge Kays."  The notices should also indicate that all hearings will be held in Courtroom 8D.

---

[7] The Court anticipates it will conduct the hearing via videoconferencing from the Federal courthouse in Springfield, Missouri.  The parties may appear in Kansas City or they may travel to Springfield.  If several class members indicate that they would like to appear at the hearing, the Court will likely reschedule the hearing and hold it in Kansas City so they can be heard in person.

ii.    Also under paragraph 19 of the "no damages" notice and paragraph 20 of the "damages" notice, the instructions for how to file a written statement of objections should be amended by deleting the phrase "including a description of the circumstances underlying each objection." A description of the circumstances underlying each objection is not necessary to object.

iii.    To avoid confusion, the Exclusion Form (Doc. 26 at 70) should be deleted and not sent to any class members. The Exclusion Form states that to be excluded from the class, a class member must sign, date, and return the form to Defendant's attorney of record. But Paragraph 16 of the "no damages" notice and paragraph 20 of the "damages" notice state that in order to be excluded from the Settlement class members must send a letter to the Court. These paragraphs do not mention any exclusion form or require it to be sent to defense counsel. A letter to the Court is sufficient to be excluded from the class, and that is all the Court will require.

iv.    The W-9 form referenced in the "damages" notice should either be included in the Damages Subclass member claim form packet, or all references to needing to complete a W-9 form to submit a claim should be deleted from the "damages" notice.[8]

The Court otherwise finds that the procedures described in the Notices meet the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and due process, and provide the best notice practicable under the circumstances. The Court further finds the proposed method of class notice, direct mailing, is reasonably calculated to reach a substantial percentage, if not all, of the Class Members.

---

[8] No such W-9 form was included in the packet filed with the Court.

7.     The Court appoints Defendant to supervise and administer the notice procedure as set forth below:

      i.     No later than fourteen (14) days from the entry of this order, Defendant shall file a copy of the templates that will be used to send notice to the class so the Court may proofread them.  Within two (2) business days of the templates being filed, the Court will enter a text order approving the templates or an order notifying the parties of any concerns.

      ii.     No later than thirty (30) days from the entry of this order (the "Notice Mailing Date"), Defendant shall cause a copy of the Notices to be mailed by first class mail to each individual and entity on the Notice List;

      iii.     Within ten (10) days of the Notice Mailing Date, Defendant shall serve on counsel and file with the Court proof, by affidavit or declaration, of such mailing.

8.     Defendant shall bear the cost of identifying and notifying Class Members by direct mail.

9.     All Class Members who do not exclude themselves from the Settlement Class by properly and timely submitting a written request for exclusion shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Settlement Class.

10.     Any Class Member who does not exclude himself or herself from the Settlement Class may enter an appearance in the Action, at his or her own expense, individually or through counsel of his or her own choice.  If he or she does not enter an appearance, he or she will be represented by Class Counsel.

11.     Any Class Member may, upon request, be excluded from the Settlement Class. Any such Class Member must submit a written request for exclusion no later than fourteen (14) days before the Final Fairness Hearing at: Clerk of the Courts, United States District Court for the Western District of Missouri, Charles Evans Whittaker Courthouse, 400 East 9th Street, Kansas City, Missouri, 64106.

12.     The written request must specify that the Class Member wants to be excluded and must include an original signature. All Class Members who submit valid and timely requests for exclusion in the manner set forth in this paragraph shall have no rights under the Settlement, shall not be entitled to any benefits under the settlement, and shall not be bound by the Settlement or any final judgment.

13.     Any Class Member may appear and show cause at the final approval hearing if he or she has any reason: why the proposed settlement of the Action should not be approved as fair, reasonable and adequate; why a judgment should not be entered thereon; why attorneys' fees and expenses should not be awarded to Class Counsel; or why an award should not be made to the Class Representatives for their representation of the Settlement Class. Provided, however, that no Class Member or any other person shall be heard or entitled to contest the approval of the terms and conditions of the proposed settlement, or, if approved, the judgment to be entered thereon approving the same, or any attorneys' fees and expenses to be awarded to Class Counsel or award made to the Class Representative, unless a written objection is filed with the Clerk of the Courts. This written objection must be filed on or before fourteen (14) days before the Final Fairness Hearing, with copies of the objection postmarked on or before fourteen (14) days before the Final Fairness Hearing and mailed to Settlement Class Counsel, Joseph A. Kronawitter at Horn Aylward & Bandy, L.L.C., 2600 Grand Boulevard, Suite 1100, Kansas City, Missouri 64108, with a copy to Defendant's counsel McGuireWoods LLP, Jarrod D. Shaw, Benjamin J. Sitter, EQT Plaza, 625

Liberty Ave., 23rd Floor, Pittsburgh, Pennsylvania, 15222-3142. The objection must set forth a statement of each objection asserted and a statement whether the objector intends to appear at the Final Fairness Hearing. Any Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed settlement as incorporated in the Settlement, and to the award of attorneys' fees and expenses to Class Counsel and the payment of awards to the Class Representatives for their representation of the Settlement Class, unless otherwise ordered by the Court.

14.     Any class member who objects in the manner provided above may exclude himself or herself within seven (7) days after the Final Fairness Hearing by submitting a written request for exclusion to: Clerk of the Court, United States District Court for the Western District of Missouri, Charles Evans Whittaker Courthouse, 400 East 9th Street, Kansas City, Missouri 64106. The written request must specify that the Class Member wants to be excluded and must include an original signature. All Class Members who submit valid and timely requests for exclusion in the manner set forth in this paragraph shall have no rights under the Settlement, shall not be entitled to any benefits under the settlement, and shall not be bound by the Settlement or any final judgment.

15.     The deadline for any Damages Subclass member to submit a claim shall be thirty (30) days before the Final Fairness Hearing.

16.     The motion in support of final approval of the Settlement shall be filed no later than twenty-one (21) days prior to the Final Fairness Hearing.

17.     Class Counsel's application for attorneys' fees and expenses shall be filed and served no later than forty-five (45) days prior to the Final Fairness Hearing. Any response to this application from Defendant shall be filed and served no later than twenty-one (21) days prior to the Final Fairness Hearing.

18.     The Releasees shall have no responsibility for any application for attorneys' fees or expenses or for incentive awards to the Class Representatives submitted by the Class Representative and Class Counsel, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the settlement.

19.     At or after the Final Fairness Hearing, the Court shall determine whether any application for attorneys' fees and expenses, and any award to the Class Representatives for their representation of the Settlement Class, should be approved.

20.     Neither this order, the fact that a settlement was reached and filed, the Settlement, nor any related negotiations, statements, or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Defendant or any other Releasee.  This order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action.

21.     The Court retains jurisdiction to consider all further applications arising out of or connected with the Settlement.  The Court may approve the Settlement, with such minor modifications as may be agreed to by the Parties, without further notice to the Settlement Class.

22.     All proceedings in this Action are stayed until further order of this Court, except as may be necessary to implement the settlement or comply with the terms of the Settlement.

23.     If:  (a) the Settlement is terminated as provided in Section 9 of the Settlement; or (b) any specified material term or condition of the Settlement as set forth in the Settlement is not satisfied as provided in Section 9 of the Settlement, then this order may not be introduced as evidence or referred to in any actions or proceedings by any person or entity and shall be treated as vacated, *nunc pro tunc* (except Paragraph 21 of this order shall remain in effect), and each party shall be restored to his, her, or its respective position in this Action as it existed prior to the execution of the Settlement.

24.     By entering this order, the Court does not make any determination as to the merits of this case.

25.     The Court retains jurisdiction over the Action to consider all further matters arising out of, or connected with, the Settlement.

**IT IS SO ORDERED.**

Date: __July 31, 2017__                          __/s/ Greg Kays_____
                                                 GREG KAYS, CHIEF JUDGE
                                                 UNITED STATES DISTRICT COURT