# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

JAMES KOMOROSKI and )
GALEN VERHULST, )
individually and on behalf of those )
similarly situated, )
                                         )
    Plaintiffs, )
                                         )    Case No. 4:16-CV-00294-DGK
v. )
                                         )
UTILITY SERVICE PARTNERS PRIVATE )
LABEL, INC. d/b/a SERVICE LINE )
WARRANTIES OF AMERICA, )
                                         )
    Defendant. )

## ORDER GRANTING CLASS REPRESENTATIVE AWARDS AND ORDERING ADDITIONAL INFORMATION CONCERNING ATTORNEYS' FEES

This case is a consumer class action. Plaintiffs James Komoroski and Galen Verhulst (collectively, "Plaintiffs") purchased utility warranties from Defendant Utility Service Partners Private Label, Inc., doing business as Service Line Warranties of America ("SLWA"), which would defray the cost to repair and replace the water service line running into their home. Plaintiffs allege SLWA denied warranty coverage for legitimate repair claims.

The Court granted final approval to the parties' settlement. Now before the Court is Plaintiffs' Motion for Award of Attorneys' Fees, Expenses and Class Representative Awards (Doc. 55). The motion seeks $3,500 in incentive payments to the class representatives, and an award of $83,000 to Plaintiffs' counsel for legal fees and expenses.

The motion is GRANTED IN PART. The Court approves the payments to the class representatives and orders Plaintiffs' counsel to provide additional information concerning fees

and expenses. While at first glance the requested fees certainly appear reasonable, the Court needs the additional information to conduct a meaningful lodestar analysis.

## Discussion

**I.  The Court approves the class representative payments.**

The Court approves payments of $3,500 to class representatives James Komoroski and Galen Verhulst for their service in this case. Both men made important contributions to this case which benefitted the class. Although Mr. Verhulst invested less time, he was integral to the damages subclass. Also, these payments do not reduce the amount or quality of relief available to the class, and the amounts are within the range courts routinely award to class representatives. *See*, *e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 award to five class representatives).

**II.  The Court needs additional information to evaluate the attorneys' fees request.**

Plaintiff's counsel suggest that a lodestar analysis is the appropriate method of determining the reasonableness of their fee request, and the Court agrees. A lodestar calculation is the product of the reasonable time spent on a matter times a reasonable rate. *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992); *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 429 (8th Cir. 2017). To make this determination, a court should know: approximately how much time was spent on a particular task; who performed that task; that person's education, skill, and experience (i.e., partner, associate, or paralegal); that person's proposed billing rate; and the billing rate for similar work in the community where the case was litigated. *See* Mary Kay Kane, Federal Practice and Procedure § 2676.2 (3d ed. April 2017) (listing some of the factors a court may consider). A list of expenses is also helpful in determining the reasonableness of the fee request, because in a case taken on a contingency fee basis, expenses can quantify the amount of

risk counsel have undertaken in the representation. *See Clark v. General Motors, LLC*, 161 F. Supp. 3d 752, 762 (W.D. Mo. 2015) (noting investing more money in a contingency fee case exposes counsel to more risk, and so justifies a higher hourly rate). Expenses can also be an indirect indicator of how much work has been performed on a case. For example, attorneys actively engaged in discovery typically incur deposition and photocopy expenses. *See id.* at 763-64 (noting expenses of less than $5,000 in an automotive crashworthiness products-liability case suggested the attorneys had not spent a great amount of time on the case).

Plaintiffs' counsel have provided the Court with a list of cases in which area courts have approved awards with higher hourly rates than those apparently sought here,[1] but only summaries of their work performed in this case. Counsel report that the total amount of paralegal and attorney time Horn Aylward & Bandy, LLC, invested in this case was 219 hours, that the value of this time was $73,995, and that their expenses were included in these fees. They also report that Mr. Norman, of Norman & Graves, LLC, worked 80.3 hours on the case at a rate of $400 an hour, and that he was not seeking reimbursement for any expenses. Counsel have offered, however, to provide more detailed time records upon request. Mot. at 8 n.9.

Counsel suggest that "when a defendant agrees to pay fees and costs separately from the benefit for a class, the court *may* approve the petition [for attorneys' fees] without examining counsel's contemporaneous time records, conducting an intensive inquiry, or consulting a special master." Mot. at 8 (emphasis added). Counsel cite a recent Eighth Circuit decision, *In re Genetically Modified Rice Litigation*, 764 F.3d 864, 869 (8th Cir. 2014), for support.

At the time of the final fairness hearing the Court believed it had sufficient information to conduct a lodestar analysis and approve the attorneys' fee request. Upon closer examination,

---

[1] The Court writes "apparently," because other than Mr. Norman's rate of $400 an hour, the Court cannot tell from the existing record what anyone else's hourly rate is.

3

however, the Court finds the existing record is inadequate to conduct a lodestar analysis for three reasons. First, the cited case does not support counsel's position. In *Genetically Modified Rice Litigation* the district court did not simply rely on a summary of time records and affidavits; it appointed a special master to review the attorneys' fee request. *Rice Litig.*, 764 F.3d at 872. This special master then scrutinized the request, inviting and considering the objections of other interested parties, which the district court subsequently addressed. *Id.* at 871-72. Second, this case is dramatically different than *Genetically Modified Rice Litigation*. That was a complex multidistrict case involving so many lawyers that the district court could not meaningfully evaluate their billing records, so the court had little option but to rely on summaries and affidavits. Also, there were adverse parties present who were more than willing to review the records and object to any excesses, so there was little need for the court to review these bills. By comparison, the present case is relatively small; the Court can easily review more detailed records; and, due to the clear-sailing provision in the settlement agreement, there is no adverse party here that can serve as the Court's proxy in reviewing these records. Third, just because a district court may, in a pinch, approve a request for attorneys' fees based on a summary of billing records, does not mean it is a good idea. Reviewing more detailed information will give the Court a better understanding of the work performed, and so result in a better decision. It might also give the public more confidence in the fairness of the court's decision making, which will hopefully dispel some of the cynicism surrounding attorneys' fees in class action cases.

Consequently, the Court directs Plaintiffs' counsel to file: (1) documentation of the time each individual attorney or staff member spent on this case (e.g., "6 hours spent drafting the complaint," "0.2 hours organizing discovery," etc.), along with that individual's hourly billing

rate; (2) a detailed list of the expenses incurred; and (3) the attorneys' fee agreements.[2] Counsel do not need to supply individual billing records, although they may do so if that is more convenient. The Court sees no reason why these records should be filed under seal, but if counsel has a compelling reason, they may move to do so. Once this material is filed, the Court will rule promptly on the motion for attorneys' fees.

### Conclusion

For the foregoing reasons, the Court approves incentive awards in the amount of $3,500 each to James Komoroski and Galen Verhulst, and orders Plaintiffs' counsel to provide additional information concerning fees and expenses.

**IT IS SO ORDERED.**

Date: November 9, 2017         /s/ Greg Kays
                               GREG KAYS, CHIEF JUDGE
                               UNITED STATES DISTRICT COURT

---

[2] The fee agreements are relevant to confirm the attorneys worked on a contingency fee basis. Work performed on a contingency fee basis justifies charging a higher hourly rate to reflect the risk assumed by the lawyers of no or little recovery. *See* Lester Brickman, *Effective Hourly Rates of Contingency-Fee Lawyers: Competing Data and Non-Competitive Fees*, 81 Wash. U. L. Q. 653, 655-56 (2003).